```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


JENNIFER R. LEMAY,

           Plaintiff,

    vs.                                Civil Action 2:13-CV-265
                                       Judge Graham
                                       Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
```

REPORT AND RECOMMENDATION

I.   Background

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is now before the Court on *Plaintiff Jennifer R. Lemay's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 12, the Commissioner's *Opposition to Statement of Errors* ("*Commissioner's Response*"), Doc. No. 15, and *Plaintiff's Reply*, Doc. No. 16.

Plaintiff Jennifer R. Lemay filed her application for disability insurance benefits on June 1, 2010, and her application for supplemental security income on June 15, 2010, alleging that she has been disabled since March 22, 2005. *PAGEID* 214, 222. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on September 26, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Mona Robinson, Ph.D., who testified as a vocational expert. *PAGEID* 93, 96. In a decision dated October 14, 2011, the administrative law judge comcluded that plaintiff was not disabled from March 22, 2005, through the date of the administrative decision. *PAGEID* 74. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 19, 2013. *PAGEID* 48.

Plaintiff was 49 years of age on the date of the administrative law judge's decision. *See PAGEID* 74, 214. Plaintiff has a high school equivalency, is able to communicate in English, and has past relevant work as a cleaner-housekeeper, kitchen helper, and laundry attendant. *PAGEID* 73. Plaintiff is insured for disability insurance purposes until December 31, 2014. *PAGEID* 64. She has not engaged in substantial gainful activity since March 22, 2005, her alleged disability onset date. *Id*.

**II. Medical Evidence**

Plaintiff presented to the emergency room on March 23, 2005 with complaints of back pain. She was given intravenous pain medication for a diagnosis of low back pain and discharged the same day. *PAGEID* 389. Plaintiff underwent four chiropractic treatments for reported "severe lumbosacral pain and discomfort" that radiated into both legs. *PAGEID* 367. The chiropractor described plaintiff as "severely antalgic, unable to sit, stand, walk anything without severe amounts

of pain." *Id*. A March 29, 2005 x-ray of the lumbar spine revealed no abnormalities. *PAGEID* 366.

Plaintiff again reported to the emergency room on April 1, 2005 for complaints of increased back pain and nausea. *PAGEID* 393-94. She again received intravenous pain medication and was released the same day. *Id*.

An April 11, 2005 x-ray revealed cholelithiasis and facet arthritis involving the L5-S1 facet joint. *PAGEID* 383.

Plaintiff completed a ten-session round of physical therapy with Charles J. Marty, M.D., on April 29, 2005. *PAGEID* 405. Plaintiff nevertheless continued to report constant pain in her legs but also indicated that "she was better" and that her pain and discomfort had reduced from a five to a three on a ten-point scale. *PAGEID* 403-07. Dr. Marty diagnosed lumbosacral strain and bilateral sciatica. *PAGEID* 407.

Herbert A. Grodner, M.D., evaluated plaintiff for the state agency on July 12, 2010. *PAGEID* 409-15. Upon examination, Dr. Grodner noted "some decreased range of motion of the lumbar spine, but no evidence of radiculopathy. . . . The examination is otherwise unremarkable, with normal range of motion and no evidence of neurologic compromise." *PAGEID* 410-11. According to Dr. Grodner, plaintiff "could perform most types of physical activities. She may have some difficulty with repetitive heavy lifting of more than 25-30 pounds on a repetitive basis. However, I do feel that she could perform most types of activity, including sedentary and light activity." *PAGEID* 411.

Neuropsychologist Marc E. W. Miller, Ph.D., examined plaintiff for the state agency on July 28, 2010. *PAGEID* 417-21. Dr. Miller assigned a global assessment of functioning score ("GAF") of 55[1] and diagnosed pain disorder with psychological factors and medical condition, dysthymic disorder – moderate – and generalized anxiety disorder – moderate to severe. *PAGEID* 420-21. According to Dr. Miller, plaintiff is moderately impaired in her ability to (1) interact with coworkers, supervisors and the public, due to anxiety, depression, agitation, and irritability, (2) maintain attention span and concentration, due to anxiety, (3) deal with stress and pressure in a work setting, due to anxiety, depression, and poor coping skills, and (4) persistence in task. *PAGEID* 420.

Dr. Marty, who had supervised plaintiff's physical therapy in 2005, examined plaintiff again on July 28, 2010. *PAGEID* 427-28. According to Dr. Marty, plaintiff could stand/walk for 20 minutes at a time for four hours in an eight hour workday and could lift/carry six to ten pounds frequently. *PAGEID* 428. Dr. Marty specifically noted a five year history of back and sciatic pain and opined that plaintiff was capable of sedentary to light activity. *Id*. Plaintiff was also moderately limited in pushing/pulling, bending, repetitive foot movements, and seeing. *Id*.

---

[1] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . ."

*Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 at *3 n.1 (6th Cir. Feb. 7, 2012).

State agency physician Eli Perencevich, D.O., reviewed the record on August 11, 2010. *PAGEID* 137-38. Dr. Perencevich opined that plaintiff could occasionally lift and/or carry 50 pounds, frequently lift 25 pounds, stand and/or walk for about six hours in an eight hour workday, and sit for about six hours in an eight hour workday. *Id*. State agency physician William Caldwell, M.D., reviewed the record on October 28, 2010, and affirmed Dr. Perencevich's assessment. *PAGEID* 163.

On December 4, 2010, plaintiff presented to the Licking Memorial Hospital with complaints of back pain. *PAGEID* 513-18. Straight leg raising was negative but there was paraspinal tenderness in the lower back. *Id*. Pain medication was prescribed and plaintiff was discharged the same day. *Id*.

Plaintiff underwent treatment at the Licking Memorial Hospital Pain Clinic for back pain beginning February 1, 2011. *PAGEID* 443. Plaintiff reported complaints of numbness, tingling, paresthesias, and weakness in her extremities; pain improves with positioning and medication. *ID*. Upon examination, straight leg raising was positive on the right side at 40 degrees, Patrick's test was positive on the right, motor strength was 4+/5 bilaterally in the lower extremities and symmetric, and there was tenderness on palpation in the lower lumbar spine axially and right sacroiliac joint. *PAGEID* 444. Vicodin and amitriptyline were prescribed and plaintiff was to undergo two cycles of lumbar epidural and right sacroiliac joint steroid injections. *PAGEID* 444-45. During a June 24, 2011 examination, plaintiff had an antalgic gait, tenderness on palpation of the right

lumbar facet and sacroiliac joints, worsening pain with lower lumbar extension and lateral rotation, facet joint loading positive on the right lower lumbar facet joints, and negative straight leg raising tests bilaterally.  *PAGEID* 534.

Plaintiff underwent mental health treatment at Behavioral Healthcare Partners on March 1, March 14, April 11, April 26, and April 29, 2011.  Although the medical records are difficult to read, *see PAGEID* 460-88, it appears that plaintiff sought treatment for anxiety and depression.  *PAGEID* 471-72.[2]  Plaintiff was diagnosed with mood disorder, NOS, and anxiety disorder, NOS.  *PAGEID* 473.  Lois Prusinowski, N.P., also diagnosed an adjustment disorder, unspecified, and assigned a GAF of 65.  *PAGEID* 440.

Plaintiff began treating with David E. Born, M.D., for back pain on December 7, 2010.  *PAGEID* 511.  Upon examination, Dr. Born noted that plaintiff's back was supple with good range of motion, no spinous process tenderness, bilateral paraspinal tenderness in the lower lumbar region, and "[p]ositive right greater than left straight leg raise test while lying down."  *Id*.  Dr. Born diagnosed back pain, likely secondary to L5 radiculopathy.  He referred plaintiff for an MRI and EMG, and prescribed pain medication.  *Id*.

A December 2010 EMG revealed an old right S1 radiculopathy, but no evidence of new or recurrent lumbar radiculopathy in the low back or either lower extremity.  *PAGEID* 431.  A December 15, 2010 MRI of the lumbar spine revealed degenerative disc disease at L4-L5, L5-L6,

---

[2] Plaintiff reported during her April 29, 2011 appointment that she was seeking treatment because her "lawyer said [she] should go see a psychiatrist."  *PAGEID* 435-41.

6

and L6-S1; diffuse disc bulges, without significant oanal stenosis; and neural foraminal stenosis and facet arthropathy. *PAGEID* 432.

On December 21, 2010, Dr. Born noted that plaintiff's back was supple with good range of motion, no spinous process tenderness, no paraspinal tenderness in the lower lumbar region, and 5/5 strength in the lower extremities. *PAGEID* 507. Plaintiff denied numbness, tingling, weakness, or paralysis in her arms or legs and reported that she used only Tylenol for pain. *Id*. Dr. Born diagnosed back pain, likely secondary to S1 radiculopathy, prescribed pain medication, and referred plaintiff for epidural steroid injections. *Id*.

Plaintiff underwent right sacroiliac joint steroid injections on April 6, May 4, and August 31, 2011, *PAGEID* 497, 551, 629, lumbar epidural steroid injections on April 6 and May 4, 2011, *PAGEID* 501, and right-side L3-4, L4-5, and L5-S1 facet joint medial nerve branch blocks on August 31, 2011. *PAGEID* 630.

Dr. Born updated plaintiff's medication on April 20, 2011. *PAGEID* 458. On June 17, 2011, Dr. Born noted no spinous process tenderness, normal straight leg raising, decreased flexion, decreased extension, decreased lateral bending, and decreased rotation. *PAGEID* 493-94.

On August 25, 2011, Dr. Born completed a physical capacity evaluation, *PAGEID* 595-600, in which he stated, "[plaintiff] has some limited flexion and extension of her spine that is consistent with her MRI findings and DDD." *PAGEID* 595. Dr. Born diagnosed depression, low back pain, and lumbosacral neuritis and opined that "[h]er pain markedly limits her ability to work. If there is a non-physical job

that she could change from sitting to standing to resting every 30 minutes or so, she would likely be able to do that." *Id*. According to Dr. Born, plaintiff can stand, walk, and sit each for three hours in an eight hour workday, for 30 minutes at a time. *PAGEID* 596. Plaintiff can rarely lift 11 - 20 pounds, occasionally bend and climb steps, and never squat, crawl, or climb ladders. *PAGEID* 596-97. Plaintiff was markedly limited in her ability to perform and complete work tasks in a normal workday at a consistent pace and in her ability to perform at production levels expected by most employers. *PAGEID* 598-600. Plaintiff was moderately limited in her ability to tolerate customary work pressures and mildly limited in her ability to behave predictably, reliably, and in an emotionally stable manner. *Id*. Dr. Born further opined that plaintiff would likely be absent from work five or more days per month due to her conditions, pain, and side effects of medication, and that her condition would likely deteriorate if she were placed under the stress associated with a job. *PAGEID* 597.

Plaintiff underwent additional physical therapy in May and June 2011. *PAGEID* 495, 520-32. Upon completion of that course of treatment, plaintiff's range of motion in the lumbar spine was "limited by grossly 50%" and her hips were "limited in all directions secondary to c/o pain." *Id*.

On August 10, 2011, neurosurgeon Carolyn S. Neltner, M.D., examined plaintiff and concluded that plaintiff was not a candidate for surgery. *PAGEID* 602-04.

An August 23, 2011 x-ray of the lumbar spine revealed "[m]ild degenerative arthritis, lumbosacral spine, with suggestion of slight narrowing of the disc space of L4 and L5. No evidence of spondylolisthesis or spondylolysis. Cholelithiasis." *PAGEID* 626. An MRI performed that same date revealed six lumbar-type vertebral segments, degenerative disc disease most prominent at L4-L5, L5-L6, and L6-S1, no significant canal stenosis, mild to moderate neural foraminal stenosis most prominent on the right at L5-L6, and cholelithiasis. *PAGEID* 627-28.

**III. Administrative Hearing**

Plaintiff testified at the administrative hearing that she is unable to work because of depression, anxiety, and back pain that radiates into her legs. *PAGEID* 102-03. Her back pain is "debilitating," she "ache[s] all the time," and she experiences spasms in her legs, feet, and back. *PAGEID* 107. Physical therapy, chiropractic care, and injections have provided only little pain relief, and her medications cause fatigue and "mess[] with [her] eyes." *PAGEID* 107-08. Plaintiff also cries "a lot," is "grouchy a lot," "withdrawn;" she "feel[s] excited inside . . . like racy." *PAGEID* 104-05.

Plaintiff goes grocery shopping, but has to lean on the cart or take breaks. *PAGEID* 105. She is able to perform "some" household chores such as cleaning, laundry, and dishes. *PAGEID* 106. On an average day, plaintiff vacuums her kitchen and living room, reads, and "l[ies] around a lot." *PAGEID* 103. Plaintiff has "a few girlfriends

9

that stop by . . . [o]nce a month or so;" she attends church weekly. *PAGEID* 105-06.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the RFC eventually determined by the administrative law judge. *PAGEID* 115-17. According to the vocational exper, such an individual could perform plaintiff's past relevant work as a cleaner/housekeeper and laundry attendant and could also perform such jobs as laborer, stores; laundry laborer; and machine tender. *Id*. The vocational expert also testified that an individual who must miss five or more days of work per month, who has marked impairments in completing production levels, and has moderate impairments in work pressures would be unable to perform competitive work. *PAGEID* 118.

**IV.   Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease, arthritis, sacroilitis, sciatica, affective disorder, and anxiety related disorder. *PAGEID* 65. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) as the claimant is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk six hours in an eight hour workday and sit six hours in an eight hour workday, except: the claimant is limited to performing two to four step tasks in an environment free of fast pace or strict production quotas with no more than superficial interaction with coworkers.

*PAGEID* 65-67. The administrative law judge relied on the testimony of the vocational expert to find that this residual functional capacity

10

allows plaintiff to perform her past relevant work as a cleaner-housekeeper and laundry attendant, as well as other jobs that exist in significant numbers in the national economy. *PAGEID* 73-74. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from March 22, 2005, through the date of the administrative law judge's decision. *PAGEID* 74.

**V. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would

11

decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth*, 402 F.3d at 595.

Plaintiff argues, first, that the administrative law judge erred in evaluating the opinion of Dr. Born, her treating physician. *Statement of Errors*, pp. 9-14.  In a related argument, plaintiff contends that the administrative law judge erred in giving great weight to the opinions of the non-examining state agency physicians, Dr. Perencevich and Dr. Caldwell.  *Id*. at pp. 14-17.  The Commissioner concedes that Dr. Born is a treating physician but does not address the related argument about the weight assigned to the opinions of Drs. Perencevich and Caldwell.  *See Commissioner's Response*, p. 6.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight the opinion is entitled to by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded to the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

In the case presently before the Court, Dr. Born opined that plaintiff can stand, walk, and sit for three hours each in an eight hour workday, for 30 minutes at a time,  *PAGEID* 596, and can rarely lift 11 through 20 pounds, occasionally bend and climb steps, and never squat, crawl, or climb ladders, *PAGEID* 596-97.  According to Dr. Born, plaintiff has marked impairments in her ability to perform and complete work tasks in a normal workday at a consistent pace and in her ability to perform at production levels expected by most employers; moderate impairments in her ability to tolerate customary work pressures; and mild impairments in her ability to behave predictably, reliably, and in an emotionally stable manner.  *PAGEID* 598-600.  Dr. Born further opined that plaintiff's impairments would

cause her to be absent from work five or more days per month and that her condition would likely deteriorate if she were placed under the stress of a job. *PAGEID* 597.

The administrative law judge assigned "little weight" to Dr. Born's medical opinions:

> As for the other opinion evidence, David Born, M.D., a physician at Cherry Westgate Family Practice, . . . [t]he undersigned gives these opinions little weight as they appear to be based mainly upon symptoms and limitations reported by the claimant, who is found to be less than fully reliable in her ability to make such reports. In addition, the assessment is not supported by the record as a whole, which indicates that the claimant is essentially normal from a physiological standpoint, which is inconsistent with the extreme limitations found within Dr. Born's assessment. In addition, the record indicates that the claimant is capable of performing simple, routine and repetitive tasks in spite of moderate limitations of her concentration, persistence or pace.

*PAGEID* 72. The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. Born's medical opinion and the reasons for assigning that weight. Although the analysis of individual factors may be succinct, it is clear that the administrative law judge expressly considered most of the factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6) and his conclusions are generally supported by substantial evidence. A formulaic recitation of the factors is not required under the circumstances. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

14

However, the administrative law judge did not recognize Dr. Born as a treating source. Although this failure might not alone constitute reversible error when the goal of the treating source rule has otherwise been met, *see e.g.*, *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 471-72 (6th Cir. 2006) ("The ALJ thus 'met the goal of § 1527(d)(2) — the provision of the procedural safeguard of reasons — even though she has not complied with the terms of the regulation.'") (quoting *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005)), that failure is not harmless in this case. In determining plaintiff's RFC, the administrative law gave "great weight" to the opinions of, *inter alios*, Dr. Caldwell and Dr. Perencevich because, *inter alia*, the opinions were "not contradicted by any treating source." *See PAGEID* 70-72. This determination is especially significant because Dr. Born's opinions directly contradict those of Dr. Caldwell and Dr. Perencevich. Notably, Drs. Perencevich and Caldwell both opined that plaintiff was capable of lifting and/or carrying more weight and standing and/or walking for longer periods of time than did Dr. Born. *PAGEID* 137-38, 163, 598-600. Furthermore, the vocational expert testified that a claimant with the limitations articulated by Dr. Born would not be able to sustain competitive employment. *PAGEID* 118. The administrative law judge's reasons for assigning greater weight to the opinions of Drs. Perencevich and Caldwell are therefore not supported by substantial evidence. Under these circumstances, the Court concludes that the action must be remanded for further consideration of the medical opinions.

It is accordingly **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** to the Commissioner of Social Security for further proceedings consistent with the foregoing.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

December 16, 2013                             *s/Norah McCann King*
                                              Norah M<sup>c</sup>Cann King
                                       United States Magistrate Judge